Muhammad Asfandyar, Esq. (CA SBN : 363217)
Musaev & Associates, PC
409 N Camden Dr., Suite 108
Beverly Hills, CA 90210
asfandyar@musaev.com
tel: (424) 269-8840

*Attorney for Petitioner*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SHAKHLO ISLOMOVNA KURBONOVA<br><br>Petitioner,<br><br>v.<br><br>Ernesto Santacruz Jr. Acting Field Office Director, ICE Los Angeles Field Office; David Venturella Director, U.S. Immigration and Customs Enforcement; Markwayne Mullin, Secretary, Department of Homeland Security; Todd Blanche, Attorney General of the United States; and Warden of the Adelanto ICE Processing Center, Adelanto, California,<br><br>Respondents. | CASE No.____________________<br><br>**PETITION FOR WRIT OF HABEAS CORPUS** |

## INTRODUCTION

1. Petitioner Shakhlo Islomovna Kurbonova, a national and citizen of Uzbekistan, seeks a writ of habeas corpus under 28 U.S.C. § 2241 to challenge the constitutionality of her confinement by U.S. Immigration and Customs Enforcement ("ICE") at the Adelanto ICE Processing Center in Adelanto, California.
2. Petitioner is an asylum applicant whose application for protection remains pending and unadjudicated on the merits. She entered the United States near Tecate, California on or about May 12, 2024 and was taken into the custody of the Department of Homeland Security ("DHS") the same day. An asylum officer found that Petitioner demonstrated a credible fear of persecution or torture, and DHS placed her in removal proceedings under section 240 of the Immigration and Nationality Act ("INA"). On June 12, 2024, ICE released Petitioner from custody on parole.
3. Following her release on parole, Petitioner lived openly in the community in Los Angeles, California for more than two years. She complied with every condition of her release, reported each change of address in writing, and appeared for every appointment and check-in that ICE directed her to attend.
4. On August 21, 2026, Petitioner appeared, voluntarily and as scheduled, for a routine check-in with ICE. She was not summoned in response to any alleged violation of the conditions of her release. At that appointment, and without prior notice to Petitioner or to counsel, ICE officers took her into custody. She has remained confined at the Adelanto ICE Processing Center, within this judicial District, since that date.
5. Respondents did not serve Petitioner with written notice terminating her parole before seizing her, as the governing regulation requires. The regulation distinguishes between the expiration of parole, which occurs automatically at the end of an authorized period, and the termination of parole, which ordinarily requires written notice. 8 C.F.R. § 212.5(e)(2)(i). Respondents took Petitioner back into custody without providing the notice that provision requires.

6. Petitioner has not been afforded any individualized custody determination before a neutral decisionmaker at which the government bears the burden of justifying her confinement. As set forth below, her ongoing civil confinement, imposed and maintained without a constitutionally adequate, individualized custody hearing while her protection claim remains pending, is fundamentally unfair and arbitrary.
7. The Due Process Clause applies to "all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). "Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992). Petitioner was paroled into the community by ICE and has been physically present in the United States and living in the interior for more than two years. She is squarely a person within the United States entitled to the full protection of the Fifth Amendment.
8. This Petition challenges the lawfulness of Petitioner's ongoing civil confinement and Respondents' failure to comply with their own parole regulation, claims that lie within this Court's habeas jurisdiction and outside the channeling and bar provisions of 8 U.S.C. § 1252.
9. Petitioner respectfully seeks: first, an order barring her transfer outside this District, and her removal from the United States, during the pendency of these proceedings, to preserve this Court's habeas jurisdiction over her custodian; and, on the merits, a writ ordering her release from unlawful confinement under conditions prior to detention, or, in the alternative, ordering Respondents to provide her a constitutionally adequate, individualized custody hearing before a neutral decisionmaker at which the government bears the burden of justifying her confinement by clear and convincing evidence.

## JURISDICTION AND VENUE

10. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1651 (All Writs Act), 28 U.S.C. §§ 2201–02 (Declaratory Judgment Act), 28 U.S.C. § 2241 (habeas corpus), 5 U.S.C. §§ 702 and 706 (Administrative Procedure Act), Article I,

§ 9, cl. 2 of the U.S. Constitution (the Suspension Clause), and the Fifth Amendment to the U.S. Constitution.

11. This Petition challenges the lawfulness of Petitioner's confinement and DHS's failure to provide constitutionally adequate custody procedures and to follow its own parole regulation, not the substance of any removal order and none has been entered into. Accordingly, 8 U.S.C. § 1252(a)(5) and (b)(9) do not channel these claims into a petition for review, and 8 U.S.C. § 1252(g) does not bar them, because the Ninth Circuit reads § 1252(g) narrowly to reach only the three discrete decisions to commence proceedings, adjudicate cases, or execute removal orders, and collateral challenges to the manner of detention and to compliance with the agency's own rules fall outside it. *See Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999).

12. Venue is proper in this district pursuant to 28 U.S.C. § 2241(a) and 28 U.S.C. § 1391(b)(2) and (e)(1) because Petitioner is physically confined within this district at the Adelanto ICE Processing Center, 10400 Rancho Road, Adelanto, California 92301, and because her immediate custodian is located within this district.

**PARTIES**

13. Petitioner Shakhlo Islomovna Kurbonova is a citizen and national of Uzbekistan, born October 25, 1988. She is assigned Alien Registration Number A226-040-776. She is currently confined at the Adelanto ICE Processing Center, Adelanto, California.

14. Respondent Ernesto Santacruz Jr. is the Acting Field Office Director of the Los Angeles Field Office of U.S. Immigration and Customs Enforcement and is responsible for administering and enforcing the immigration laws and detention policies within ICE Enforcement and Removal Operations' Los Angeles Area of Responsibility, which includes the facility where Petitioner is confined. The Field Office Director is sued in his or her official capacity.

15. Respondent David Venturella is the Director of U.S. Immigration and Customs Enforcement and is responsible for the administration and enforcement of the immigration laws of the

United States; routinely transacts business in this District; and is legally responsible for pursuing any effort to detain and remove the Petitioner. Respondent is sued in his or her official capacity.

16. Respondent Markwayne Mullin is the Secretary of Homeland Security and has ultimate authority over DHS. In that capacity and through his agents, Respondent Mullin has broad authority over and responsibility for the operation and enforcement of the immigration laws; routinely transacts business in this District; and is legally responsible for pursuing any effort to detain and remove the Petitioner. Respondent Mullin is sued in his official capacity.

17. Respondent Todd Blanche is the Attorney General of the United States and the most senior official at the Department of Justice. In that capacity and through his agents, he is responsible for overseeing the implementation and enforcement of the federal immigration laws. The Attorney General delegates this responsibility to the Executive Office for Immigration Review ("EOIR"), which administers the immigration courts and the Board of Immigration Appeals. Respondent Blanche is sued in his official capacity.

18. The Warden of the Adelanto ICE Processing Center is responsible for the custody and supervision of persons confined at that facility, including Petitioner. The Warden is sued in his or her official capacity as Petitioner's immediate custodian.

## EXHAUSTION

19. There is no statutory exhaustion requirement for a petition under 28 U.S.C. § 2241 challenging the constitutionality and lawfulness of immigration detention. Petitioner's claims arise under the Fifth Amendment and the agency's own regulation; neither the asylum officer, the Immigration Judge, nor the Board of Immigration Appeals has authority to adjudicate the constitutionality of the manner of her seizure and confinement or to award the release this Petition seeks.

20. Any prudential exhaustion is excused because further administrative process would be futile and Petitioner will "suffer irreparable harm if unable to secure immediate judicial consideration of [her] claim." *McCarthy v. Madigan*, 503 U.S. 140, 147 (1992). Each

additional day of unlawful physical confinement inflicts irreparable injury that no later administrative ruling can remedy, and Petitioner's transfer out of this District, or her removal from the United States, would impair this Court's ability to adjudicate her custody.

## LEGAL BACKGROUND

***A. The Constitution Protects Noncitizens Like Petitioner from Arbitrary Confinement and from Seizure Without Fair Process.***

21. The Constitution establishes due process rights for "all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017) (quoting *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001)). These protections are both substantive and procedural.

22. "[T]he touchstone of due process is protection of the individual against arbitrary action of government," *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974), including "the exercise of power without any reasonable justification in the service of a legitimate government objective," *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). "Freedom from imprisonment, from government custody, detention, or other forms of physical restraint, lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690.

23. To the extent Respondents invoke *Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103 (2020), to argue that Petitioner's due process rights are limited, that reliance is misplaced. *Thuraissigiam* involved a noncitizen apprehended within twenty-five yards of the border shortly after entry and held in expedited-removal credible-fear procedures. Petitioner, by contrast, was found to have a credible fear, was placed in ordinary removal proceedings under section 240 of the INA, was released on parole by ICE, and thereafter lived in the interior of the country for more than two years before her seizure. Once a noncitizen is physically present in the United States, the Due Process Clause applies to her as a "person," even if her presence is unlawful, temporary, or otherwise subject to removal. *See Zadvydas*, 533 U.S. at 693.

***B. Procedural Due Process Requires a Meaningful, Individualized Custody Determination.***

24. The procedural component of the Due Process Clause prohibits the government from imposing physical restraint without adequate procedural safeguards, including notice and an opportunity to be heard "at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). Adequacy of process is evaluated by balancing (1) the private interest affected; (2) the risk of erroneous deprivation under the procedures used and the value of additional safeguards; and (3) the government's interest. *Id.* at 335.

25. Each *Mathews* factor favors Petitioner. The private interest, freedom from physical confinement, is at its peak. The risk of erroneous deprivation is acute because Petitioner has been afforded no individualized custody determination whatsoever before a neutral decisionmaker at which the government bears the burden of justifying her confinement. The government's interest in confinement without adequate process is weakest where Petitioner was released on parole by the agency itself, complied with every condition of that release for more than two years, appeared voluntarily at the very check-in at which she was seized, and has no criminal conviction.

***C. Petitioner's Status as a Paroled Asylum Seeker Who Complied with Every Condition of Her Release Bears Directly on the Arbitrariness of Her Confinement.***

26. Congress created the asylum framework, 8 U.S.C. § 1158, to permit noncitizens fleeing persecution to seek protection without fear that doing so will subject them to arbitrary treatment. Petitioner did what that framework contemplates: she was found to have a credible fear of persecution or torture, she has pursued her claim through the immigration courts, and she complied with every obligation the agency imposed on her while at liberty. The civil-confinement question before this Court is whether the government may seize and hold such a person, at an appointment she was directed to attend, without ever affording her a constitutionally adequate, individualized custody hearing.

***D. Parole Ordinarily May Be Terminated Only on Written Notice.***

27. The regulations governing parole distinguish between the expiration of parole, which occurs automatically at the end of an authorized period, and the termination of parole, which ordinarily requires written notice and occurs under specified circumstances. 8 C.F.R. § 212.5(e)(2)(i) provides that parole may be terminated "upon written notice" when the purpose of parole has been accomplished, or when "neither humanitarian reasons nor public benefit warrants the continued presence of the alien in the United States." An agency is bound to follow its own regulations, and a decision to revoke parole without the notice the regulation requires is reviewable. *See, e.g.*, *Torres v. Noem*, No. 25-CV-2697, 2026 WL 234076, at *2 (W.D. Wash. Jan. 29, 2026) (holding that revocation of parole is reviewable under the Administrative Procedure Act "because it denies the noncitizen's right to liberty and is an action from which rights have been determined"); *Arias v. Larose*, No. 3:25-CV-02595, 2025 WL 3295385 (S.D. Cal. Nov. 25, 2025).

## FACTUAL ALLEGATIONS

***A. Petitioner's Entry, Credible Fear Determination, Parole, and Pending Application.***

28. Petitioner is a national and citizen of Uzbekistan. On or about May 12, 2024, she entered the United States near Tecate, California, and was taken into DHS custody the same day. She was thereafter held at the Otay Mesa Detention Center in San Diego, California.

29. On June 7, 2024, DHS issued and served a Notice to Appear, Form I-862, charging Petitioner as removable under INA § 212(a)(6)(A)(i) and INA § 212(a)(7)(A)(i)(I). The Notice to Appear states on its face that it was issued after an asylum officer found that Petitioner demonstrated a credible fear of persecution or torture, placing her in removal proceedings under section 240 of the INA.

30. On June 12, 2024, ICE released Petitioner from custody on parole. The Form I-830E documenting that release reflects that Petitioner was "Released from ICE custody" and "PAROLED," that she reported her address upon release as 550 South Serrano Avenue, Los Angeles, California 90020, and that she was provided a Form EOIR-33 and advised of her obligation to report any change of address to the immigration court.

31. Petitioner has filed her Form I-589, Application for Asylum and for Withholding of Removal, seeking asylum, withholding of removal, and protection under the Convention Against Torture. Her application remains pending and unadjudicated on the merits. No order of removal has been entered against her, and there is no administratively final order authorizing her removal from the United States.

***B. Petitioner Complied with Every Condition of Her Release for More Than Two Years.***

32. From her release on June 12, 2024 until her seizure on August 21, 2026, a period of approximately two years and two months, Petitioner resided continuously and openly in Los Angeles, California. She reported each change of address in writing, most recently on July 24, 2026, when she reported her address as 5217 West Adams Boulevard, Apartment 604, Los Angeles, California 90016. She appeared for every appointment and check-in that ICE directed her to attend and never failed to appear as required. Petitioner lived with her family in Los Angeles and remained a resident of this District.

33. On August 18, 2026, officers of the Los Angeles Police Department arrested Petitioner in connection with an allegation under California Penal Code § 273.5. She was released from county custody the following day, August 19, 2026, when bail was posted on her behalf. No conviction has been entered against Petitioner in connection with that arrest, no court has adjudicated the underlying allegation, and Petitioner is presumed innocent of it. Petitioner has no criminal conviction of any kind.

***C. ICE Seized Petitioner at a Routine Check-In and Has Confined Her Ever Since.***

34. On August 21, 2026, Petitioner appeared, voluntarily and as scheduled, for a routine check-in with ICE. The appointment was one of the periodic appearances that ICE had directed her to make and that she had faithfully made since her release in June 2024. At that appointment, and without prior notice to Petitioner, ICE officers took Petitioner into custody.

35. Petitioner has remained in physical ICE custody ever since. According to DHS's ICE Online Detainee Locator System, Petitioner is in ICE custody and is presently held at the Adelanto ICE Processing Center in Adelanto, California, within this judicial District.

36. Respondents did not serve Petitioner with written notice terminating her parole, either before or at the time they took her into custody. No such written notice exists, and Respondents have identified no ground on which Petitioner's parole was terminated.

37. Petitioner has not received any individualized custody determination before a neutral decisionmaker at which the government bears the burden of justifying her confinement. She has been afforded no bond hearing, and no neutral adjudicator has made any individualized finding that her confinement is justified by danger to the community or risk of flight.

38. Petitioner's application for protection remains unadjudicated on the merits. Her confinement will continue indefinitely absent review by this Court, even though she has never been afforded any individualized custody hearing to justify it.

## CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

***Violation of the Fifth Amendment, Procedural Due Process (Confinement Without a Meaningful, Individualized Custody Determination)***

39. Petitioner repeats and re-alleges the allegations contained in the preceding paragraphs of this Petition as if fully set forth herein.

40. Due process requires that, before seizing and confining Petitioner and in order to maintain her ongoing confinement, the government afford her fair process appropriate to the circumstances, including meaningful notice, an explanation of the basis for her confinement, and a meaningful opportunity to contest her custody before a neutral decisionmaker. *Mathews*, 424 U.S. at 333–35.

41. Petitioner has received no constitutionally adequate custody process at all: no individualized custody determination before a neutral decisionmaker, no bond hearing, and no opportunity to require the government to justify her confinement by reliable evidence and to bear the burden of proof. Confinement imposed and maintained on that basis, while her application for protection remains pending, violates the procedural component of the Due Process Clause. Petitioner is entitled to release or, in the alternative, to a constitutionally adequate

custody hearing at which the government must bear the burden of proof by clear and convincing evidence.

**SECOND CLAIM FOR RELIEF**

***Violation of the Fifth Amendment, Substantive Due Process***

42. Petitioner repeats and re-alleges the allegations contained in the preceding paragraphs of this Petition as if fully set forth herein.

43. Civil immigration confinement must bear a reasonable relation to a legitimate, non-punitive purpose. *Zadvydas*, 533 U.S. at 690; *Jackson v. Indiana*, 406 U.S. 715, 738 (1972). Confining Petitioner without any individualized justification, where the agency itself released her on parole, where she complied with every condition of that release for more than two years, where she was seized at an appointment she was directed to attend, and where she has no criminal conviction, serves no legitimate civil purpose and is arbitrary and punitive in effect. Petitioner's confinement therefore violates substantive due process, and she is entitled to release.

**THIRD CLAIM FOR RELIEF**

***Violation of 8 C.F.R. § 212.5(e) and the Administrative Procedure Act (Re-Detention Without Written Notice of Termination of Parole)***

44. Petitioner repeats and re-alleges the allegations contained in the preceding paragraphs of this Petition as if fully set forth herein.

45. ICE released Petitioner on parole on June 12, 2024. Under 8 C.F.R. § 212.5(e)(2)(i), parole may be terminated "upon written notice" on the grounds the regulation specifies. Respondents seized Petitioner and returned her to confinement on August 21, 2026 without serving the written notice that provision requires and without identifying any ground for termination. An agency must follow its own regulations, and Respondents did not.

46. Respondents' termination of Petitioner's parole without the required notice is final agency action that is arbitrary, capricious, an abuse of discretion, and not in accordance with law, and was taken without observance of procedure required by law. 5 U.S.C. § 706(2)(A), (D).

Petitioner is entitled to have that action set aside and to be restored to the parole status she held before August 21, 2026.

## PRAYER FOR RELIEF

Petitioner respectfully requests that this Court:

a) To preserve this Court's habeas jurisdiction over Petitioner's immediate custodian during the pendency of these proceedings, enjoin Respondents from transferring Petitioner outside this judicial District, and from removing Petitioner from the United States, except for the purpose of her release;

b) Issue a writ of habeas corpus ordering Respondents to release Petitioner from ICE custody under conditions prior to detention;

c) Declare that Petitioner's ongoing confinement, imposed and maintained without a constitutionally adequate, individualized custody determination, violates the Due Process Clause of the Fifth Amendment, and that Respondents' termination of Petitioner's parole without written notice violated 8 C.F.R. § 212.5(e) and the Administrative Procedure Act;

d) In the alternative to immediate release, and only if the Court declines to order release, order Respondents to provide Petitioner, within seven (7) days, a constitutionally adequate, individualized custody hearing before a neutral decisionmaker at which the government bears the burden of demonstrating, by clear and convincing evidence, that ongoing confinement is justified, and order that if Respondents fail to provide such a hearing, Petitioner shall be released;

e) Award Petitioner her costs and reasonable attorneys' fees in this action as provided for by the Equal Access to Justice Act and 28 U.S.C. § 2412; and

f) Grant such further relief as the Court deems just and proper.

Date: September 2, 2026

Respectfully Submitted,

*/s/ Muhammad Asfandyar*
Muhammad Asfandyar, Esq.
*Attorney for Petitioner*